The plaintiff declared for that the defendant so carelessly and negligently kept his horses, mules, and other cattle that they escaped from his land, went thence upon the plaintiff's land, then in cultivation, and there injured and destroyed a large quantity of plaintiff's corn and peas, then in his field maturing.
The plaintiff offered evidence to show, and did show, that he (556) was the owner of a plantation on one side of the Yadkin River, and that the defendant was the owner of another plantation on the opposite side of the same river, it being the dividing boundary between the respective tracts of land; that both plantations were surrounded by good and legal fences on all sides, save where the river was the dividing line; while along that and between the two plantations there was no fence whatever, and that the Yadkin, at this point, was a narrow, shallow stream, easily forded by cattle, horses, or mules. The plaintiff further proved that in the summer of 1858 he had in his field, bordering on the river as aforesaid, a crop of corn and peas then maturing and nearly matured; that the defendant at that time turned his horses, mules, and other cattle into his own field, situated as above described (which was in grass), and that they several times escaped and passed over the river into the plaintiff's field and ate and destroyed the plaintiff's growing crop of corn and peas. For this action was brought. The question of damages *Page 428 
was submitted to the jury, and the question whether the plaintiff was entitled to recover on the state of facts above described was reserved by his Honor. A verdict was taken for the plaintiff, subject to his Honor's opinion upon the point of law reserved, with leave to set aside the verdict and enter a nonsuit in case the court should be against the plaintiff on the question of law.
The Court, being of opinion that the plaintiff could not recover, set aside the verdict and directed a nonsuit, from which plaintiff appealed.
The case made by the transcript from the Superior Court of Caldwell is whether a planter who has not a fence, as required by law, about his cultivated field, nor any navigable or deep water to serve instead thereof, can recover for a trespass of the defendants domestic animals on a field thus unprotected. We answer, with the court below, that he cannot.
(557) To maintain a liability of the kind it would be necessary to hold that the proprietors of such animals are bound to keep them under restraint and prevent them from going and pasturing on the unenclosed grounds of a neighbor. For, we taken it, the rights and liabilities of the parties would be the same in a case where there is no fence or barrier and one in which the barrier is declared by law to be insufficient.
At the term of this Court which has just closed its session at the city of Raleigh we held, incidentally, in Laws v. R. R. (ante, 468), that a proprietor of cattle is not obliged to keep them from the unenclosed lands of a neighbor. The going at large of all kinds of domestic animals upon unenclosed lands about them seems to be a matter commonly tolerated by the laws and usages of the country. The law makes it penal to kill animals trespassing upon a cultivated field that is not lawfully enclosed, and also indictable to kill them in the range in certain localities; from which it would appear that they are not without the pale of the law's protection when in these conditions. And although they may be trespassers, having no right of pasture outside of the owner's lands, and, therefore, may be driven and kept off, if possible, yet, to effect these objects, it is not lawful to kill, maim, or abuse. In short, the law recognizes, in a variety of ways, the going at large of domestic animals as a common privilege, and it would seem to follow as a necessary consequence that the owner is not liable in trespass for breaking the close when the former's cattle wander in search of food upon the latter's unenclosed grounds. *Page 429 
Thus the keeping under enclosure domestic animals, which is regarded as the rule of the common law of England, if it were ever recognized in our waste and thinly populated country, has been long since abrogated by various legislative acts and by constant usage to the contrary.
The stream between the parties to this suit, by the statement of (558) the case, appears to be insufficient as a substitute for a fence, and we have already said it is the same whether there be no fence or an insufficient one.
We are of opinion, therefore, in the case before us, neither proprietor would be liable to the other for damages done by animals of the one wandering across the common boundary upon the lands of the other.
PER CURIAM. Affirmed.
Cited: Burgwyn v. Whitfield, 81 N.C. 264; Runyon v. Patterson,87 N.C. 344; S. v. Mathis, 149 N.C. 548; Marshburn v.Jones 176 N.C. 521.